## SMITH v. MOST WORTHY EUREKA GRAND LODGE, FREE AND ACCEPTED MASONS FOR STATE OF LOUISIANA.*

### No. 1667.

Court of Appeal of Louisiana. First Circuit.
Jan. 12, 1937.

*Rehearing denied March 5, 1937.

Chas. J. Mundy, of New Orleans, for appellant.

Harvey Peltier and Hubert A. Lafargue, both of Thibodaux, for appellee.

LE BLANC, Judge.

Plaintiff is the widow of Louis Crockett, who was formerly a member of Terrestrial Lodge No. 162, Free and Accepted Masons, a subordinate lodge of Eureka Grand Lodge, defendant herein. The subordinate lodge is located at Lockport, La. Plaintiff's husband died on September 27, 1935, and, claiming that she had been designated as his beneficiary to receive $300 due by the said grand lodge from its so-called "charity fund," she instituted this suit to recover that amount from the defendant, with legal interest, less whatever amounts may be found to be due as assessments by her deceased husband before his death and which had been timely tendered by him but refused by the officers of the local lodge.

An exception of no cause or right of action was sustained in the lower court and plaintiff's suit dismissed at her costs, whereupon she took this appeal.

Plaintiff recited in her petition that her deceased husband's original certificate of membership in the local and grand lodges had been partly destroyed and defaced, and that on December 26, 1929, a new certificate had been issued to him bearing number 14494, which new certificate she attached to and made part of her petition. There is a certificate of membership annexed to the petition as alleged, bearing the number stated, showing that her deceased husband had been initiated and raised to the degree of master mason. This certificate is signed by the officers of the local lodge, and at the bottom thereof there is another certificate signed by the officers of the grand lodge attesting that the local lodge is a duly constituted lodge working under the jurisdiction of the grand lodge. Certainly it does not appear, and we don't think it is even pretended by plaintiff, that by virtue of that certificate alone the local or grand lodge incurred any obligation such as is claimed, toward her. The vital allegation of her petition, on which a cause of action against the defendant, if any is presented on the face of her pleadings alone, is found in paragraph 5, in which she avers:

"That the defendant organization issued no policy calling for the payment of insurance dues but fifty cents (.50¢) of the dues of each member per month, are sent to the Grand Lodge by the said Local Lodge, and each member designates his beneficiary on the books of the Local Lodge, which information, in turn, is transmitted by the Local Lodge to the Grand Lodge, and the said Louis Crockett designated your petitioner, his wife, as his beneficiary to receive the $300.00 due by the Grand Lodge from its so called Charity Fund."

In support of its exception of no right or cause of action, the defendant produced and filed in the record a copy of the constitution, and by-laws by which the grand lodge is governed, with special reference to the laws governing the department of charity from which plaintiff claims the $300 benefit is due here. Counsel for plaintiff contends that these documents have no place in the record on consideration of an exception of no cause of action, but we note that he also obtained permission of the court, after the exception had been submitted, to file in the record the proceedings of the last convention of the grand lodge for the purpose of assisting his client in supporting her cause of action. Inasmuch as the defendant organization is one that is governed entirely by its constitution and a set of rules, by-laws, and regulations, we consider it thoroughly proper that the

documents containing those laws and rules on which plaintiff's claim is necessarily based, should be consulted with the view of ascertaining whether or not she has a cause of action.

■ Turning to the copy of the constitution which is the fundamental law of the organization, first, we find under article 11, that: "For the benefit of Master Masons' widows, orphans and beneficiaries, the Grand Lodge may devise ways and means by the organization of a Mutual Relief Association for the betterment of benevolence * * *." Availing itself of the prerogative thus granted to it, the grand lodge, in 1907, enacted a law under which a charity fund was established under certain rules and regulations therein prescribed. So that there could be no misunderstanding of the idea conveyed by its very name, that it was a "Charity" fund, one of the first provisions of the law read: "Be it further enacted and ordained that this Charity Fund is established solely for the purpose of giving relief as uniformly as possible as hereinafter directed and shall not be construed or interpreted as being an insurance or endowment department or fund." Under section 1 of article 1, prescribing the rules and regulations governing that fund, it is provided that upon satisfactory evidence of the death of a master mason in good standing, there "may be donated" from the fund "the sum of one dollar ($1.00) to three hundred dollars ($300.00) charity money, to the widow, orphans, or any relative he may suggest, and when suggestions are made, said suggestions must be written upon blanks provided for that purpose by the Grand Secretary, for which there is no charge to be made * * *." We presume that it was to show a compliance with the requirement of making the suggestion referred to that plaintiff alleged that her husband had designated her as beneficiary on the books of the local lodge, which information had been transmitted to the secretary of the grand lodge, but even that, it will be noted, was not a technical compliance with the rules prescribed by the defendant grand lodge. The important question which arises on the exception, however, is whether or not the defendant had ever incurred any obligation at all toward the plaintiff arising out of its charity fund.

Referring again to the law establishing that fund, we find under section 2, wherein to further emphasize its character as strictly a charity fund, it is prescribed that it "is not and cannot be under Masonic Law and Usage, a life insurance fund or company or an endowment bureau * * *. There is no policy issued and no contract of any nature whatsoever between Master Mason and the M. W. Eureka Grand Lodge, F. & A. M., of La." If there is no contractual relation arising between the organization itself and the member, out of the creating and establishing of the fund, how, then, can it be said that the plaintiff is entitled to receive $300 as her deceased husband's beneficiary "due by the Grand Lodge" as is alleged in her petition? The fund being solely and strictly a charity fund, out of which *may be donated* the sum of $1 to $300 on the death of a member to some one suggested by him during the lifetime of his membership, there is nothing on which to base the claim that anything is *due* such person by the Grand Lodge. (Italics ours.)

Counsel for plaintiff calls our attention to the report of the proceedings of the grand lodge at its last convention showing that similar claims as here made had been paid to certain parties upon the death of members of the same local lodge with which her deceased husband was affiliated. That may be and most probably is so, but there is nothing which indicates by that action that they were paid because of any obligation or liability which may have existed on the part of the defendant organization. Under the rules and laws governing the operation of the charity fund, we presume that these were voluntary payments made to the parties named, and who no doubt were found qualified to receive them. It may be suggested from this that there might be some arbitrariness or unfairness in dispensing the fund, but that is not the basis on which plaintiff has brought her suit, and it is a matter with which we are not here concerned.

■ There is another ground on which we believe the exception of no right of action might be sustained, as we doubt very much, from the allegations made, that even though there ever had been any obligation incurred toward her deceased husband out of the charity fund, that he died "in good and regular standing" as a member, which was necessary in order for him or his beneficiary to participate in it. The receipt book which she annexes to her petition shows that the last payment of dues was made by her husband in June, 1933. She alleges that thereafter, in the months of July and August following, she sent certain

amounts, the same varying in each instance, to the local lodge in payment of his dues, but that the same were refused. Her allegation is that she sent these payments "by the hand" of certain parties, but it is not averred that they were tendered to the officer authorized to receive them. Nothing further was done by her, and it was not until September 27, 1935, more than two years after, that her husband died. At that time, he was definitely in arrears and no steps were ever taken, as far as the petition discloses, to have him reinstated and placed in good standing in order to qualify him to receive any of the benefits of the order.

We are satisfied that the case was properly disposed of on the exception of no cause or right of action in the lower court, and the judgment therefore stands affirmed.